IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| ANTOR MEDIA CORPORATION, § | |
|    *PLAINTIFF,* § | |
| § | CIVIL ACTION NO. 2:07-cv-00102-DF |
| v. § | JUDGE DAVID FOLSOM |
| § | JURY DEMANDED |
| METACAFE, INC., ET AL, § | |
|    *DEFENDANTS.* § | |

**DEFENDANTS MACMILLAN PUBLISHERS, INC.'S AND MACMILLAN PUBLISHERS, LTD.'S REPLY IN SUPPORT OF MOTION TO STAY PENDING REEXAMINATION**

Plaintiff's offer not to oppose a stay if the Macmillan Defendants agree to the Antor Stipulation[1] makes it clear there is no genuine dispute on the propriety of a stay – the disagreement reaches only the form of the stipulation.

## I.     A STAY IS, INDISPUTABLY, PROPER IN THIS CASE.

By its silence Antor effectively concedes 2 out of the 3 traditional factors that courts consider in deciding whether to grant a stay. Antor's Response does not dispute that "a stay would simplify the issues in question and trial of the case" or that discovery has not yet begun in the case and a trial date has not been set.[2] It cannot. These truths are self-evident.

The only argument that Antor advances in opposition to a stay goes to the first factor. In particular, Antor claims it would be unduly prejudiced by the delays associated with a stay. This argument, however, goes too far.

This is the 6th lawsuit initiated by Antor Media before this Court, over the same patent (U.S. Patent No. 5,734,961). As Antor is well aware, the '961 patent is under reexamination by the U.S. Patent and Trademark Office. The PTO granted Nokia's request for an *ex parte* reexamination on January 5, 2006, and, in so doing, it implicitly called into question the continued viability of some, if not all, of the claims in the '961 patent. But neither the pending reexamination nor the prior stays ordered by this Court have moderated Antor's propensity for filing new patent complaints. Since this Court's September 27, 2006 Order (containing the Antor stipulation), Plaintiff has filed four (4) additional complaints. This case, one of the most recent, was filed over a year after the Patent Office allowed the petition for reexamination. Indeed, measured from the date that Antor filed its first patent infringement complaint in this

---

[1] Response to Macmillan Publishers, Inc.'s and Macmillan Publishers, Ltd.'s Motion to Stay Pending Reexamination ("Response") [Docket No. 87] at 7. To clarify, Antor did not offer the Macmillan Defendants an unopposed stay before Defendants filed their motion.

[2] *Soveraign Software L.L.C. v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (citation omitted).

Court,[3] Antor waited over 3 ½ years before bringing suit against the Macmillan Defendants.

To be sure, the PTO has issued no official pronouncements since it allowed the petition for reexamination. The most likely culprit for this delay, however, is Antor.

On March 3, June 13, November 17 and December 21 of 2006, Antor burdened the Patent Office with over 1200 prior art references through multiple Information Disclosure Statements.[4] Antor's list of references was not ordered by import or weight. No explanations or summaries accompanied the listed references.[5] It would not be surprising, therefore, if the examiner is still slogging his or her way through those references. The delay that Antor complains of, in short, is its own doing.

The Patent Office agrees to reexamine a patent only when there exists a substantial new question of patentability.[6] Should the patent emerge from reexamination, it will likely be narrower in scope and lead to simpler issues at trial (if Antor is able to maintain its claims against the Macmillan Defendants at all). Allowing the case to proceed under these facts, when Plaintiff cannot reasonably claim undue prejudice and the case is at its earliest stages, would waste the resources of the Court and the parties. Antor has not disputed that proceeding during the pendency of the re-examination would be a waste of the Court's and the parties' time and resources.

## II.     THE DATATREASURY STIPULATION IS FAIR AND JUST

Antor was under an obligation to provide prior art references in connection with the Patent Office re-examination. But that obligation did not require Antor to summarize the

---

[3] *Antor Media Corp. v. Audiogalaxy Inc., et al.*, 2:03-cv-00320-DF.
[4] *See,* Information Disclosure Statement dated March 3, 2006 attached as Exhibit A.
[5] The Macmillan Defendants acknowledge that Antor submitted Apple's Supplemental Response to Antor Interrogatories; the Expert Declaration of Wicker Regarding Invalidity, Unenforceability, and Noninfringing Alternatives; and the Expert Report of the Honorable Gerald J. Mossinghoff to the Patent Office, but these documents offer the examiner little guidance with respect to the 1200+ references Antor submitted.
[6] 37 C.F.R. § 1.525(a).

references, order them by import, or explain their relevance. And, as noted above, when Antor submitted its list of 1200+ prior art references, it did not voluntarily do any of the above to ease the burden it imposed on the PTO examiner. Under these circumstances, an overworked patent examiner will likely not have a fair opportunity to consider the 1200+ references. As the Federal Circuit noted in *Rohm & Haas*, it is unrealistic to presume an examiner is aware of material art when it is buried under a mountain of information: "The conclusion that [the examiner] ... was 'fully informed' rests solely on the presentation ... of a mountain of largely irrelevant data ... It ignores the real world conditions under which examiners work;"[7] See also, *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) ("'burying' a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith. MPEP § 2004, Item 13 (4th ed., rev. 5, Jan. 1981) ('Don't submit long lists of prior art if it can be avoided. Eliminate clearly irrelevant and marginally pertinent cumulative prior art. If a long list is submitted, highlight those references which may be of most significance.')").[8] Antor suggests its reference-dump in the PTO gives Defendants a bite at the apple. This suggestion bears little resemblance to reality and is neither fair nor accurate.

The DataTreasury Stipulation,[9] however, resolves this problem. It preserves for Defendants the ability to articulate invalidity positions that have not been advanced before the Patent Office while precluding arguments that have genuinely been considered. And there can be little doubt that the limitations imposed by this Stipulation are both meaningful and significant.

---

[7] *Rohm & Haas Co. v. Crystal Chemical Co.*, 722 F.2d 1556, 1573 (Fed. Cir. 1983).
[8] The district court found the applicant's attorneys "attempted to deceive the PTO" by burying relevant art within a list of less than 100 references. *Id.* at 1182-83. But because these attorneys were actually submitting the art to remedy an earlier non-disclosure, the Federal Circuit found no intent to deceive.
[9] As recited in the Court's January 10, 2007 Order [*i.e.*, Docket No. 98, 2:05-cv-00291-DF].

This is a stipulation that the Court previously adopted in the DataTreasury litigation after entertaining extensive briefing and arguments from both sides. Multiple defendants in the DataTreasury litigation declined to adopt the Stipulation, and most defendants in the current round of Antor litigation have not joined in the current motion. If the DataTreasury Stipulation truly gave Defendants 'two bites at the apple,' then there would be no reason for defendants interested in a stay (and the record suggests all defendants in the DataTreasury litigation were interested in a stay) to decline the Stipulation.

In its Response, Antor argued there is no reason why the Macmillan Defendants should be granted a less restrictive stipulation than the one used in *Antor II*. Antor's contention misses the mark because the circumstances here are different than the circumstances in *Antor II*. The Macmillan Defendants did not have the opportunity to participate in the re-examination petition and thereby to influence which prior art would be submitted and, thus, have not had any bite at the apple. In addition, at the time the Antor Stipulation was written, neither the *Antor II* defendants nor Antor itself advised this Court that Antor responded to the re-examination with the type of reference dump it has submitted.

Antor has burdened the Patent and Trademark Office with over 1200 references. Patent Office rules and Federal Circuit precedents both cast doubt on an examiner's ability to meaningfully identify and consider material references under far less onerous conditions. There is no way for the Court or Defendants to know if the references submitted by Antor will be meaningfully reviewed during reexamination. The Macmillan Defendants have not been heard in the reexamination proceedings and will have no opportunity to address Antor's future arguments before the Patent Office. Plaintiff's proposed stipulation guts Defendants' invalidity defense before the Macmillan Defendants are afforded any opportunity to be heard on the issue. This is neither fair nor appropriate.

Antor's Response wholly fails to explain why the Antor Stipulation is in any way fairer or more equitable under current circumstances than the DataTreasury Stipulation given the process defects noted above. The fact that the Antor Stipulation may give Antor a tactical advantage cannot be a reason for its adoption by this Court.

## CONCLUSION

There is no genuine debate before the Court about the propriety of a stay. The '961 patent was in reexamination for over a year before this suit was ever filed. Its scope will likely change before it reemerges from the Patent Office, if at all. This case is in its infancy. And Antor cannot reasonably claim undue prejudice resulting from the delay.

With regard to the specific terms of an appropriate stipulation, Antor has failed to articulate a meaningful basis for rejecting the DataTreasury Stipulation proposed by Defendants or for adopting the Antor Stipulation that Plaintiff favors. Third parties such as the Macmillan Defendants cannot participate in deliberations before the Patent Office once an *ex parte* reexamination begins (*i.e.*, after the PTO considers the petition and allows the reexamination), and the patent owner has no incentive to summarize, guide, or order the references it submits to the PTO. Where, as here, a patent owner submits over 1200 references to the Patent Office as a part of the reexamination proceeding without providing any meaningful guidance or help to the examiner, those references are not meaningfully before the Patent Office. The DataTreasury Stipulation is the only one that addresses this process defect, and it is the only one that should be adopted by the Court.

Dated: June 29, 2007                    Respectfully submitted,

**ATTORNEYS FOR DEFENDANTS**                   /s/ Li Chen
**MACMILLAN PUBLISHERS, INC.**           **LI CHEN**
**AND MACMILLAN PUBLISHERS, LTD.**       ATTORNEY-IN-CHARGE
                                         Texas Bar No. 24001142
                                         Email: LChen@Sidley.com
                                         **KELLEY CONATY**
                                         Texas Bar No. 24040716
                                         Email: kconaty@Sidley.com
                                         **SIDLEY AUSTIN, L.L.P.**
                                         717 North Harwood, Suite 3400
                                         Dallas, Texas 75201
                                         tel. 214-981-3300
                                         fax 214-981-3400

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3):

                                         /s/ Kelley Conaty