IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ANTOR MEDIA CORPORATION, § | |
| § | |
| PLAINTIFF, § | |
| § | |
| v. § | CIVIL ACTION NO. |
| § | 02:07CV102 |
| METACAFE, INC., et al. § | |
| § | |
| DEFENDANTS. § | |

**NEW FRONTIER MEDIA INC.'S REPLY IN SUPPORT OF ITS MOTION TO SEVER AND TO STAY PENDING REEXAMINATION**

Antor has presented no reasoned explanation why this Court should not sever New Frontier from the welter of unrelated entities that Antor has sued in this most recent installment of its patent infringement litigation. Antor's broad-brush allegations in its Complaint and in its response to New Frontier's motion to sever and stay give no clue as to its actual claims of alleged infringement against each of these disparate defendants.[1] In similar litigation involving Antor's claims of infringement of the same patent, Antor has either agreed to the stay and severance[2] or the Court has granted a stay.[3]

---

[1] Moreover, it is decidedly odd that a company that claims ownership to downloading and streaming on the internet has virtually *no* presence on the internet itself, other than being named in articles noting its penchant for suing multiple defendants in multiple lawsuits. *See, e.g.,* Patent Troll Tracker (last updated May 22, 2007) http://trolltracker.bolgspot.com/2007/05/eastern-district-of-texas-march-2007; Mike Dillon, *Cautiously Optimistic*, (May 14, 2007) http://blogs.sun.com/dillon/entry/cautionsly_optimistic; Patrick Nicolodi, *Transmitting intelligence Over A Network is Patented?,* (last updated Jun 15, 2005) http://mobile.contentsimulation.com/news/20050615/en2_valuable_mobile.php.

[2] *See* Exhibit A, attached (Order of Apr. 2, 2007 granting Samsung Telecommunications LLP's Unopposed Motion to Sever and to Stay in Case No. 5:06-CV-239-DF, *Antor Media Corp. v. Samsung Tele. LLP & Sony Ericsson Mobile Communs., Inc.*)

[3] *See* Order of 09/27/2006, Case No. 2:05-cv-00186-DF-CMC, Dkt #410, at 2-3 (hereafter *Antor II* Order, attached as Exhibit A to New Frontier's Motion to Sever and Stay Pending Reexamination).

1

"[T]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination . . . proceedings."[4] Antor acknowledges the three factors upon which courts usually rely to decide these motions to stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set."[5]

Of these three factors, Antor addresses only the "unduly prejudicial" factor by arguing that it will be subjected to an "indefinite stay" because the PTO has not yet ruled on the reexamination. Contrary to Antor's contention, all three factors favor granting the stay.

### A.   All Three Factors Weigh Strongly in Favor of A Stay Pending Reexamination
#### 1.   A stay achieves the efficiencies of reexamination.

Courts have found that the most important factor in determining whether a stay should be granted is the timing of the reexamination request. Stays pending reexamination are invariably granted when a case is in its incipient stage and significant discovery has not occurred.[6]

This case is at a very preliminary stage. There has been *no* discovery to date, and there is no trial setting. Antor filed its original complaint against one defendant, Metacafe, on March 27, 2007, and did not add the other twenty defendants, including New Frontier, to the suit until April 11, 2007. The PTO had already granted the request for reexamination well before this lawsuit was filed, and doubtless the PTO will issue its opinion long before this case progresses substantially. A stay should be entered in this case to avoid the inefficiency of two concurrent proceedings on the patent's validity.

---

[4] *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).
[5] *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406-07 (W.D.N.Y. 1999).
[6] *Snyder Seed Corp. v. Scrypton Sys. Inc.*, No. 98-CV-87S, 1999 WL 605701 at *2 (W.D.N.Y. 1999); *ASCII Corp.*, 844 F. Supp. at 1381 (finding stay pending reexamination "a sound means by which the court may

In the *Antor II* proceeding, Antor raised the same objections to Nokia's Motion to Stay as it raises here.[7] There, the Court noted that "Antor contends substantial resources have already been expended in this case . . . .[including production of] hundreds of thousands of documents; depositions in this case are occurring and some parties have engaged in settlement discussions . . . ."[8] Yet, despite the advanced stage of the litigation in that case, this Court nonetheless granted a stay pending the reexamination. A stay in this case is equally, or more, justified than in the *Antor II* litigation.

### 2. PTO Reexamination Early in This Litigation Will Simplify and Narrow Disputed Issues.

A stay also gives the PTO, the institution best able to analyze the prior art and to assess the validity of the patents, the first chance to address validity.[9] Both the parties and this Court will benefit from a stay in these proceedings because it will avoid litigation on claims that are later cancelled or modified.

A qualified patent examiner is clearly in the best position to review the prior art and to assess the validity of the patents.[10] If the PTO finds the patents invalid, or amends the claims, a stay will prevent this Court and the parties from wasting time litigating invalid or amended claims, which is a likely result, as the PTO decided to reexamine the '961 patent. This Court recognized that a stay will most likely simplify the issues, noting that "of the 510 PTO *ex parte* reexaminations that were ordered in 2005 . . .about 95% resulted in claim amendments or

---

facilitate resolution"); *GPAC Inc. v. D.W.W. Enter. Inc.*, 144 F.R.D. 60, 62-63 (D.N.J. 1992) (clear benefit to the court to shift technical issues of validity to the PTO where action in early stages of litigation).

[7] *See Antor II* Order at 2-3, attached as Exhibit A to New Frontier's Motion to Sever and Stay Pending Reexamination).

[8] *Id.* at 3.

[9] *Agar Corp. v. Multi-Fluid, Inc.*, 983 F. Supp. 1126, 1127 (S.D. Tex. 1997); *Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996) (noting that many courts prefer to postpone decisions on infringement until patentability issues are ruled on by expertise of the PTO).

[10] *GPAC Inc.*, 144 F.R.D. at 63 (PTO in "much better" position to evaluate prior art through reexamination).

cancellations."[11]  Indeed, inconsistent findings by the PTO and the court arising from concurrent proceedings could result in "a tremendous waste of time and resources…."[12]

### 3. Antor Has an Adequate Remedy at Law and Will Not Be Unduly Prejudiced by a Stay.

Antor has not demonstrated any undue prejudice or tactical disadvantage that will result from a stay.  Indeed, Antor admits that the Court has granted stays in similar litigation under the same conditions New Frontier agrees to abide by.  This Court found in *Antor II* that "[s]taying this matter pending reexamination in conjunction with a stipulation, if anything, puts Antor at an advantage."[13]

Antor itself has delayed in pursuing its infringement claim against New Frontier and cannot reasonably argue that a further delay to allow the PTO to complete the reexamination procedure already underway will unduly burden it.  Antor filed its original complaint in the *Antor II* case in May, 2005—almost two years before suing New Frontier.  Further, unlike a company solely reliant on the technology at issue to operate a competitive business, Antor is a patent holder that only makes money by attempting to license this technology.  Monetary damages are therefore sufficient to compensate Antor for any loss due to the alleged infringement.  This Court recognized that in this circumstance Antor can be adequately compensated through economic damages.[14]  Accordingly, the benefits gained by reexamination are not outweighed by undue burden or a tactical disadvantage to Antor.

---

[11] *Antor II* Order at 8.
[12] *Bausch & Lomb Inc*., 914 F. Supp. at 953.
[13] *Antor II* Order at 7.
[14] *Antor II* Order at 7-8.  *See also Perricone v. Unimed Nutritional Servs.*, No. 301-CV-512, 2002 WL 31075868, at *3 (D. Conn. 2002) (granting stay where potential harm caused by lost customers and erosion of market position would be sufficiently compensated by monetary damages).

Antor has failed to meet any of the three factors affecting whether to grant a stay pending reexamination.

### B. The Court Should Grant New Frontier a Severance.

Antor's primary argument is that a severance should not be granted because a stay is inappropriate.[15] However, as shown above, a stay should be granted, as should a severance.

Antor contends that a severance is inappropriate because common questions of law and fact are involved here. Even if that were true—New Frontier disagrees—Rule 20 requires more. The second element for permissive joinder under Rule 20, which Antor ignores, is that the claims must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences."[16] Courts, including this one, have routinely held that joinder is inappropriate in intellectual property actions when the claims are against unrelated defendants, even when there may be common questions of law or fact.[17] Severance is proper in this case, as Antor has alleged claims against twenty-one unrelated and disparate entities that were not involved in the same transactions or occurrences.

**Prayer**

For all of the foregoing reasons, New Frontier respectfully requests that the Court grant its motion to sever Antor's claims against New Frontier from those of the other defendants, and to stay the severed litigation as to New Frontier pending the final determination of patentability of the '961 patent by the PTO, conditioned on New Frontier's *Antor II* stipulation.

---

[15] As noted above, Antor has agreed previously to a severance and stay in a similar case. See Exh. A, attached.

[16] FED. R. CIV. P. 20(a).

[17] *See, e.g., Reid v. Gen'l Motors Corp.*, 240 F.R.D. 260, 263 (E.D. Tex. 2007) (noting, "Allegations of infringement against two unrelated parties based on different acts do not arise from the same transaction" (citation omitted) and granting severance); *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998); *New Jersey Mach., Inc. v. Alford Indus., Inc.*, 1991 WL 340196 at *2 (D.N.J. Oct. 7, 1991); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch. Pierce, Fenner & Smith, Inc.*, 564 F. Supp. 1358, 1370-71 (D. Del. 1983).

| | |
|---|---|
| DATE: September 10, 2007 | **AKIN GUMP STRAUSS HAUER & FELD LLP** |

*/s/ R. Laurence Macon*

_____
R. LAURENCE MACON
State Bar No. 12787500
300 Convent Street, Suite 1600
San Antonio, Texas 78205
(210) 281-7000 (telephone)
(210) 281-2035 (facsimile)

**ATTORNEY FOR DEFENDANT
NEW FRONTIER MEDIA, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this Motion was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(b)(1). Pursuant to Fed. R. Civ. P. 5(a)-(d) and Local Rule CV-5(b)(2), all other counsel or record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 10th day of September, 2007.

*/s/ R. Laurence Macon*

_____
R. LAURENCE MACON